**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**GURMAIL SINGH PAUL,**

                **Petitioner,**                 1:12-mc-32
                                                              (GLS/RFT)

       v.

**JEH JOHNSON**, Secretary of
Homeland Security,[1]

                **Respondent.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PETITIONER:**
Office of Frederick P. Korkosz        FREDERICK P. KORKOSZ,
744 Broadway                           ESQ.
Albany, NY 12207

**FOR THE RESPONDENT:**
STUART F. DELERY                 TROY D. LIGGETT, ESQ.
Acting Assistant Attorney General
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
450 Fifth Street, NW
Washington, DC 20044

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

---

[1] The Clerk is directed to substitute Jeh Johnson, Secretary of Homeland Security, for respondent Janet Napolitano, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

## I. Introduction

On May 16, 2012, petitioner Gurmail Singh Paul filed a petition for a *de novo* review, pursuant to 8 U.S.C. § 1421, of the denial by United States Citizenship and Immigration Services (USCIS) of his application for naturalization. (Pet., Dkt. No. 1.) Pending before the court is respondent Jeh Johnson's motion for summary judgment, seeking denial of Paul's petition or, in the alternative, an evidentiary hearing in accordance with 8 U.S.C. § 1421(c). (Dkt. No. 17.) For the reasons that follow, the government's motion is granted and Paul's petition is dismissed.

## II. Background[2]

Paul is a native and citizen of India, who is currently a lawful permanent resident of the United States. (Resp.'s Statement of Material Facts (SMF) ¶¶ 1, 11, Dkt. No. 17, Attach. 3.) He first entered the United States on November 21, 1980. (*Id.* ¶ 2.) Paul's initial entry in 1980 was without inspection, and he was subsequently detained by border patrol officers. (*Id.*) Paul requested, and was granted, voluntary departure by an immigration judge. (*Id.* ¶¶ 2-4.) At some point, Paul did depart the United

---

[2] Unless otherwise noted, the facts are not in dispute.

States, but he returned again a short time later, again entering without inspection. (*Id.* ¶¶ 4-5.) Ultimately, Paul's mother filed a Petition for Alien Relative on his behalf, which was approved. (*Id.* ¶ 8.) He filed a subsequent application for adjustment of status, and was granted status as a lawful permanent resident, a status he has maintained since 1986. (*Id.* ¶¶ 10-11.) In 1999, Paul filed his first application for naturalization, which was denied on the grounds that his prior criminal convictions demonstrated a lack of good moral character. (*Id.* ¶ 15; Dkt. No. 17, Attach. 8 at 2-4.)

Paul has had a long history of legal troubles since the time he entered the United States. In 1983, Paul was arrested and charged with assault, petit larceny, resisting arrest, and disorderly conduct, ultimately resulting in a conviction of disorderly conduct and payment of a $150 fine.[3]

---

[3] It is unclear whether Paul disputes this fact. In his response to the government's Statement of Material Facts, Paul "agrees that the facts contained in [the paragraph regarding his 1983 arrest] are not in question," (Dkt. No. 20, Attach. 1 ¶ 1), but later in his response, as well as in his motion response papers, he asserts that no such arrest ever occurred, (*id.* ¶ 5; Dkt. No. 20 at 6). In support, Paul has submitted a letter indicating that he has no record with the Colonie Police Department, (Dkt. No. 17, Attach. 8 at 21), but other record evidence appears to demonstrate that such an arrest did in fact occur, (Dkt. No. 17, Attach. 5 at 28-34, 36; Dkt. No. 17, Attach. 8 at 38-39). In any event, this discrepancy is of no moment, given the remainder of Paul's criminal history, discussed further below.

(Dkt. No. 17, Attach. 5 at 29, 33, 36.) In 1984, Paul was arrested and charged with driving while intoxicated (DWI). (*Id.* at 41.) He ultimately pleaded guilty to a reduced charge of driving while ability impaired (DWAI), and paid a $250 fine. (*Id.*) In 1985, Paul was again arrested and charged with DWI. (Dkt. No. 17, Attach. 8 at 35.) In connection with those charges, Paul pleaded guilty to DWAI—for which he paid a $250 fine—and failure to obey a police officer—for which he paid a $100 fine. (*Id.* at 35-36.) In 1986, Paul was once again charged with DWI, as well as unlicensed operation of a vehicle and criminal impersonation. (Dkt. No. 17, Attach. 6 at 29.) He pleaded guilty to the DWI and unlicensed operation charges, in satisfaction of all charges, and was sentenced to a total of $850 in fines and a one-year revocation of his license. (*Id.*) In 1990, Paul was charged with DWI and reckless endangerment, ultimately pleading guilty to DWI and receiving a sentence of five years probation with a $1,000 fine. (*Id.* at 31.) In 1998, Paul was charged with attempted sodomy, sexual abuse, and endangering the welfare of a child. (Dkt. No. 17, Attach. 8 at 30-31.) While the attempted sodomy charge was dismissed, Paul pleaded guilty to endangering the welfare of a child, in satisfaction of the remaining charges, and was ordered to serve three years probation. (*Id.*)

4

Finally, in June 2008, Paul was arrested and charged with DWI, resisting arrest, leaving the scene of property damage, and failing to stop at a stop sign. (*Id.* at 6.) He ultimately pleaded guilty to a reduced charge of DWAI, in satisfaction of the remaining charges, and was fined $500. (*Id.* at 6, 28-29.)

On November 30, 2009, Paul filed a second application for naturalization with USCIS. (Dkt. No. 1 at 12.) USCIS again denied Paul's naturalization application because he had not established his good moral character during the statutory period. (*Id.* at 10-15.) Paul filed an administrative appeal and requested a hearing before USCIS, and a hearing was conducted on November 17, 2011. (Dkt. No. 17, Attach. 9 at 9, 11-13.) On April 26, 2012, USCIS affirmed the denial of Paul's naturalization application, (*id.* at 2, 25-30; Dkt. No. 1 at 9), and Paul subsequently filed his petition for review by the district court on May 16, 2012, (*see generally* Pet.).

### III. Standards of Review

#### A. Review Pursuant to 8 U.S.C. § 1421

Title 8 of the United States Code, Section 1421(c) provides that "[a] person whose application for naturalization under this subchapter is denied

5

. . . may seek review of such denial before the United States district court . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

**B.     Summary Judgment**

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

The government asserts in its motion that Paul is ineligible for naturalization because he has committed unlawful acts within the statutory period, and these unlawful acts, considered with his criminal history prior to the statutory period, mandate a finding that Paul lacks good moral character as required by statute, and Paul has failed to establish extenuating circumstances.[4] (Dkt. No. 17, Attach. 2 at 16-19.) Paul argues

---

[4] The government has also proffered an argument, which is unopposed by Paul in his response brief, that Paul is ineligible for naturalization because he lacks attachment to the principles of the

6

that he has established his good moral character, (Dkt. No. 20 at 4-8), or, alternatively, that summary judgment should not be granted because there are genuine disputes of material fact, (*id.* at 8-10). For the following reasons, the court agrees with the government, and finds that the undisputed facts demonstrate that Paul lacked good moral character during the five-year statutory period preceding his application, as required by 8 U.S.C. § 1427(a), and therefore the government's motion is granted and Paul's petition is denied.

An applicant seeking naturalization must strictly comply with the requirements for citizenship established by Congress, *Fedorenko v. United States*, 449 U.S. 490, 506-07 (1981), and bears the burden of establishing "eligibility for citizenship in every respect," *Immigration & Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 886 (1988) (internal quotation marks and citation omitted). *See* 8 C.F.R. § 316.2 ("The applicant shall bear the

---

Constitution and is unable, in good faith, to take the oath of allegiance to become a United States citizen. (Dkt. No. 17, Attach. 2 at 20-23); *see* 8 U.S.C. § 1427(a) ("No person . . . shall be naturalized unless such applicant . . . is . . . attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."). Because the court finds that Paul is ineligible due to his failure to demonstrate good moral character, it is unnecessary to address this alternative argument made by the government.

burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization").  "[W]hen doubts exist concerning a grant of [citizenship], generally at least, they should be resolved in favor of the United States and against the claimant."  *United States v. Manzi*, 276 U.S. 463, 467 (1928).

No person may become a United States citizen unless he establishes, for the "five years immediately preceding the date of filing his application" for naturalization, that he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."  8 U.S.C. § 1427(a).  Determinations of good moral character pursuant to this statutory provision are made on a case-by-case basis in accordance with the "generally accepted moral conventions current at the time."  *Repouille v. United States*, 165 F.2d 152, 153 (2d Cir. 1947) (internal quotation marks omitted); *see* 8 C.F.R. § 316.10(a)(2) ("[T]he Service shall evaluate claims of good moral character on a case-by-case basis taking into account . . . the standards of the average citizen in the community of residence.").

The statute further provides that "in determining whether the

applicant has sustained the burden of establishing good moral character . . . the [inquiry] shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e). The implementing regulations provide that conduct prior to the five-year statutory period may be taken into consideration "if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2). When there is no genuine issue of material fact, and a statutory bar prevents a petitioner from establishing good moral character, summary judgment is appropriate. *See Chan v. Gantner*, 464 F.3d 289, 295-96 (2d Cir. 2006).

As relevant here, the regulations provide that, "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character." 8 C.F.R. § 316.10(b)(3)(iii). While not explicitly defined in the

9

regulations or relevant case law, any "extenuating circumstances" must pertain to the applicant's culpability for the unlawful acts, and not to any consequences therefrom. *See, e.g.*, *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) ("Extenuating circumstances are those which render a[n act] less reprehensible than it otherwise would be"); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005).

Here, it is undisputed that Paul committed an unlawful act during the statutory period—specifically, his June 2008 arrest and subsequent guilty plea in January of 2009 to DWAI. (Resp.'s SMF ¶ 16; Dkt. No. 17, Attach. 8 at 6); *see* N.Y. Veh. & Traf. Law § 1192(1) (McKinney 2011). Further, it is clear that this unlawful act adversely reflects upon Paul's moral character because, in light of Paul's extensive history of DWI-related offenses, he should have known the unlawfulness of his actions, yet he continued to violate the law, and his willful disregard of the law reflects adversely on his moral character. *See Khamooshpour v. Holder*, 781 F. Supp. 2d 888, 897 (D. Ariz. 2011). Therefore, unless he is able to demonstrate extenuating circumstances mitigating his culpability for his unlawful acts, he will be found to lack the requisite good moral character for citizenship. *See* 8 C.F.R. § 316.10(3). It is the applicant's burden to demonstrate extenuating

circumstances, and Paul has failed to satisfy that burden here. *See United States v. Lekarczyk*, 354 F. Supp. 2d 883, 887 (W.D. Wis. 2005).

The argument offered by Paul on this point consists merely of one sentence in his response to the government's motion, in which he asserts that he "had been going through an emotionally difficult period," and "did not believe that he drank enough to have his blood alcohol exceed the legal limit when he was arrested." (Dkt. No. 20 at 6-7.) Despite numerous opportunities throughout his application process to offer extenuating circumstances to both USCIS and the court, (*see* Dkt. No. 17, Attach. 8 at 47, 49-52; Dkt. No. 17, Attach. 9 at 7, 12, 15), the only record evidence supporting this is testimony from Paul in which he explains that he was angry and upset that day because of a disagreement with his wife. (Dkt. No. 17, Attach. 10 at 22-23.) The court fails to see how this isolated allegation, unsupported by any evidence of Paul's culpability for his underlying offense, is sufficient to establish extenuating circumstances that mitigate the effect of his unlawful act on his moral character. *See, e.g.*, *Suarez*, 664 F.3d at 662 (refusing to find extenuating circumstances where the applicant asserted that the underlying offense was his first and only criminal conviction, he played a minimal role in the offense, and he

received no compensation for his role); *Khamooshpour*, 781 F. Supp. 2d at 895; *United States v. Okeke*, 671 F. Supp. 2d 744, 751 (D. Md. 2009).

Further, although the remainder of Paul's criminal history, all occurring prior to the beginning of the five-year statutory period, cannot alone serve as a basis for a finding that Paul presently lacks good moral character, his history may be considered to the extent that it reflects his current moral character, or to show that there has not been a reform in his character since that time. *See Tieri v. Immigration & Naturalization Serv. of Dep't of Justice*, 457 F.2d 391, 393 (2d Cir. 1972). Here, as outlined above, Paul pleaded guilty, during the statutory period, to DWAI. (Dkt. No. 17, Attach. 8 at 6, 28-29.) However, this was only the latest in a series of alcohol-related, unlawful incidents, with the others occurring over the course of several years prior to the statutory period. Given Paul's unlawful acts during the statutory period, and his history of similar offenses, he has not made a sufficient showing of good moral character to merit the granting of his naturalization application. *See Rico v. Immigration & Naturalization Serv.*, 262 F. Supp. 2d 6, 10 (E.D.N.Y. 2003) (denying applicant who had only a single DWI offense during the statutory period because that offense, along with his numerous DWI offenses prior to the statutory period,

indicated that he had not reformed and did not presently possess the good moral character required for citizenship).

In any event, because Paul has committed an unlawful act within the statutory period and has failed to establish extenuating circumstances, the court finds that he lacks good moral character pursuant to 8 C.F.R. § 316.10(b)(3)(iii).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Jeh Johnson, Secretary of Homeland Security, for respondent Janet Napolitano, and amend the caption accordingly; and it is further

**ORDERED** that the government's motion for summary judgment (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Paul's petition (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court